**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **KRISTOFER T. CHAFFIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. _____** |
| | ) | |
| **DANIEL A. SCHNEIDER, and** | ) | **JURY DEMAND** |
| **TACOMA CHIROPRACTIC GROUP,** | ) | |
| **LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff, Kristofer Chaffin, brings this Complaint for breach of fiduciary duty, fraud, constructive fraud, conversion, breach of contract, unjust enrichment, and tortious interference against Defendants, Daniel Schneider and Tacoma Chiropractic Group, LLC ("Tacoma Tennessee"), and alleges as follows:

## NATURE OF THE ACTION

1.    Dr. Kristofer Chaffin is a licensed chiropractor who became business partners with Defendant, Daniel Schneider, in 2015.  As partners and equal members of various entities, they engaged in numerous business ventures together in the healthcare field from 2015 through 2023.

2.    One of their ventures involved the sale and distribution of wound care products and services to health care providers.  Although Dr. Chaffin and Dr. Schneider agreed to operate as partners and equal members with respect to the wound care business, they also agreed in the last quarter of 2021 that Dr. Schneider would be primarily responsible for managing and growing that

business on behalf of their partnership and the various entities owned and controlled by the partnership.

3.     Rather than manage and grow the wound care business for the benefit of the partnership, as had been their prior dealings and process, Dr. Schneider breached his partnership agreements with Dr. Chaffin and violated his fiduciary duties to Dr. Chaffin by secretly diverting millions of dollars in wound care business from the partnership through various channels and through various entities that were formed, owned, and operated by Dr. Schneider.

4.     Indeed, unbeknownst to Dr. Chaffin until recently, Dr. Schneider began using Tacoma Tennessee and potentially other entities, including one named AWCC PLLC, to steal business from the partnership and, consequently, Dr. Chaffin.  Dr. Schneider used the branding and goodwill generated by the partnership's wound care business to develop new wound care business, and then wrongfully diverted that new business and the profits generated therefrom to entities he owned and controlled such as Tacoma Tennessee and American Wound Care Centers PLLC in a wrongful scheme to enrich himself at Dr. Chaffin's expense.  Dr. Chaffin never operated or had access to Tacoma Tennessee, and he had no knowledge of American Wound Care Centers PLLC until recently, as it was secretly formed without Dr. Chaffin's knowledge.

5.     As a 50% partner and equal member with Dr. Schneider entitled to 50% of the profits generated by the wound care business, Dr. Chaffin now brings this action against Defendants to recover the funds that they have unlawfully and fraudulently diverted and misappropriated from the onset of Dr. Schneider's misconduct through the present.

<u>**PARTIES, JURISDICTION, AND VENUE**</u>

6.     Dr. Chaffin is a licensed chiropractor who is currently domiciled in Portugal.

7.     Dr. Schneider is a citizen and resident of Tennessee who resides in Williamson County, Tennessee.

8.     Tacoma Tennessee is an LLC formed in Tennessee with a principal office located at 9240 Lehigh Drive, Brentwood, Tennessee, 37207.  Dr. Schneider is the sole owner and member of Tacoma.

9.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity between Dr. Chaffin and the Defendants, and the amount in controversy is greater than $75,000.

10.    This Court has general personal jurisdiction over Dr. Schneider because he is a citizen and resident of Tennessee.  This Court has general personal jurisdiction over Tacoma Tennessee because it was formed in Tennessee, and its principal place of business is in Tennessee.  This Court also has personal jurisdiction over Defendants because Plaintiff's claims arise from wrongful acts and omissions committed by Defendants in Tennessee.

11.    This Court is the proper venue for this action under 28 U.S.C. § 1391 because Dr. Schneider resides in this District, and because Tacoma's principal office is in this District.

## FACTS

12.    Dr. Chaffin and Dr. Schneider met in Chiropractic School in 2005 and became good friends during their time in school.  Dr. Chaffin attended Dr. Schneider's wedding in Las Vegas in 2008.

13.    In 2015, Dr. Schneider approached Dr. Chaffin about becoming business partners. Over the course of several conversations, Dr. Schneider pitched Dr. Chaffin on the idea of operating as 50/50 partners in connection with various business ventures in the healthcare field.

14.    One of the initial ventures Dr. Schneider proposed to work on with Dr. Chaffin as 50/50 partners was the growth and management of stem cell and pain management clinics in Washington state.   At the time of these initial partnership discussions, Dr. Schneider was operating

3

stem cell and pain management clinics through an entity he had formed in Washington known as Tacoma Chiropractic Group ("Tacoma Washington").

15.     Dr. Chaffin had hesitations about partnering with Dr. Schneider because Dr. Schneider's relationships with prior business partners had ended acrimoniously on two occasions that he was made aware of.  One ended partnership was with their mutual friend from chiropractic school, and the other involved Dr. Schneider's partners in stem cell clinics in Washington following a government investigation.

16.     Notwithstanding these foreboding signs, Dr. Chaffin agreed to become partners with Dr. Schneider and executed a formal Purchase and Sale Agreement with Dr. Schneider and Tacoma Washington in 2015 memorializing the parties' business relationship.  Under the Purchase and Sale Agreement, the parties agreed that Dr. Chaffin would be a part-owner of three pain relief centers in Washington, and that "[a]ll future healthcare entities will be 50/50 partnerships in perpetuity."

17.     After becoming partners with Dr. Schneider, Dr. Chaffin devoted considerable time and resources to helping grow their stem cell and pain management clinics.  Dr. Chaffin, who was living in Georgia at the time, frequently travelled out of state to promote the parties' business to various clinics. With Dr. Schneider being banned from entry into multiple international destinations due to criminal investigations, Dr. Chaffin traveled internationally to present to clinics in his stead.  Although Dr. Schneider participated in the pain management and stem cell business, Dr. Chaffin did the majority of the work, even living part time in Dr. Schneider's home with Dr. Schneider and Dr. Schneider's family members from 2017 to 2018 in Gig Harbor, Washington. Dr. Chaffin sacrificed time away from his own family for the sake of growing the business, knowing that in the future, Dr. Schneider was to take on more of this responsibility.

4

18. It was during this time (2017 to 2018) that the two partners first worked with and bought products from AmnioTechnology, a lab located in Phoenix, Arizona. Over the years, Dr. Chaffin maintained the relationship with this lab and its staff.

19. In 2017, in keeping with their prior agreements and customary practices, Dr. Chaffin and Dr. Schneider started a second venture as 50/50 partners that was focused on the distribution of liquid injections called "Flowable," a regenerative medicine that treats joint pain along with providing some anti-aging benefits. In what became a routine practice for the parties throughout the duration of their partnership, they formed separate legal entities in Washington to operate and manage the liquid injection business for the benefit of the partnership. One of those entities was Vitality Biologics, LLC ("Vitality Washington").

20. Dr. Chaffin and Dr. Schneider each own an equal interest in Vitality Washington, and Dr. Schneider manages the entity's bank account and other records. Dr. Chaffin did not have or express the need to have access to the bank account of Vitality Washington, as Dr. Chaffin believed at the time that Dr. Schneider was operating fairly and transparently with him.

21. Upon Dr. Schneider moving from Washington to Tennessee in or around 2019, Drs. Chaffin and Schneider formed a legal entity in Georgia in 2019 to assist in the continued operation of the partners' liquid injection business, which entity was known as Vitality Biologics LLC ("Vitality Georgia"). Dr. Chaffin formed Vitality Georgia because he was living in Georgia at the time and was continuing to perform the majority of the work on the liquid injection business. Dr. Chaffin and Dr. Schneider each owned an equal interest in Vitality Georgia, despite the business registration only showing Dr. Chaffin as a member.

22. Throughout the parties' relationship as business partners, it was common for Dr. Chaffin and Dr. Schneider to take turns being sole members of any particular entity or bank

account, while keeping the other partner informed as to the business. In the case of Vitality Georgia, Dr. Schneider did not have or express the need to have access to its bank account, as Dr. Chaffin operated in full transparency with his partner.

23.     Dr. Chaffin would provide weekly updates to Dr. Schneider regarding the status of the business, its bank statements, and full disclosure of revenues to be shared equally for the week. This communication was typically an electronic e-mail correspondence from Dr. Chaffin to Dr. Schneider, breaking down the revenues for the week and calculating the 50/50 division of profits to be wired. Similarly, Dr. Chaffin would send copies of the monthly bank statements to Dr. Schneider for full transparency. Throughout their business relationship, Dr. Chaffin has wired millions of dollars to Dr. Schneider as his rightful 50/50 share of profits.

24.     By 2020, the partners had accumulated strategic relationships with 41 clinics to whom they had sold liquid injections.

25.     By the end of 2020, the partners shifted their focus from liquid injections and began a wound care vertical. By January 2021, the partners agreed via text message that the name of the new vertical would be American Wound Care Centers ("AWCC") and the partners worked together to develop a logo and branding for the business. Around this same time, the partners worked together on a PowerPoint presentation titled, "New Verticals: American Wound Care Centers," which they would later present to clinics located across the United States—including clinics they had done business with previously—in an effort to obtain wound care business from them.

26.     Consistent with their overarching 50/50 partnership agreement covering all healthcare related business ventures, the partners discussed and agreed that they would be 50/50 partners in the wound care vertical. Indeed, on multiple occasions after the partners started the

6

wound care vertical, they reaffirmed to one another that they were 50/50 partners who were committed to the AWCC business and would share profits equally.

27.     For example, on March 23, 2021, Dr. Schneider texted Dr. Chaffin that "[w]e are 100% focused together on wound care." Dr. Chaffin expressed his agreement with the sentiment by pressing the emphasize button on Dr. Schneider's message. Two days later, on March 25, 2021, Dr. Schneider texted Dr. Chaffin about the AWCC business and volunteered that "we'd of course still make 100%" of the profits from the business, referring to both Dr. Chaffin and himself.

28.     On April 23, 2021, Dr. Chaffin and Dr. Schneider texted again about AWCC, and Dr. Schneider confirmed once again that the parties were splitting profits 50/50.

29.     In connection with their new wound care vertical business, the partners distributed skin allografts and provided other wound care products and services to medical providers using the AWCC name and brand, including the former "Flowable" liquid injections. A skin allograft is a wound covering processed from healthy amniotic tissues used by medical providers to overlay and support native tissue that has been burned or lost. Conditions requiring a skin allograft include, but are not limited, burns, ulcers from diabetes, orthopedic clinical conditions, chronic pain, joint pain, tendon/fasciae/ligament injuries, synovial injuries, injured chondral surfaces, chronic tendinopathies, and tendinosis.

30.     As they had done with the liquid injection business, the partners initially used the Vitality Georgia entity to help run the AWCC business. Later, beginning in 2022, the parties also used an entity in Tennessee known as Vitality Biologics LLC ("Vitality Tennessee") to help run the AWCC business.

31.     Although the partners used Vitality Georgia and Vitality Tennessee to help run the AWCC business, Dr. Schneider filed tax returns for Vitality Washington that reported some (but

apparently not all) of the income derived from the AWCC business through Vitality Washington and prepared K-1s that allocated profits derived from this partial income to Dr. Schneider and Dr. Chaffin on a 50/50 basis.

32.     After years of Dr. Chaffin doing the majority of the work on the parties' business ventures, and after a hard year on revenues during the 2020 start of the Covid-19 pandemic, Dr. Chaffin and Dr. Schneider agreed in October 2021 that Dr. Schneider would take the lead in managing and growing the wound care business.

33.     From that point forward, Dr. Chaffin played a supporting role in AWCC's business development, including but not limited to, being the sole signatory on AWCC contracts and providing advice and input to Dr. Schneider regarding the company's business, marketing, and branding strategies.  Dr. Schneider very regularly asked Dr. Chaffin for input as he navigated the accounts and sought to expand relationships with various doctors, some of which Dr. Chaffin had a much better relationship with.

34.     For example, on one occasion on or around February 9, 2022, Dr. Chaffin was in Dubai exploring new stem cell products.  Dr. Schneider was in Nashville, Tennessee, meeting with clinics to present the AWCC wound care vertical and asked Dr. Chaffin to record a video of himself in front of the Burj hotel saying hello to the clinics and "saying sorry you can't be there but the new information is going to build their clinics and we haven't been wrong yet."  Dr. Schneider wanted a video from Dr. Chaffin to play in the beginning of the presentation to lean on the goodwill and positive relationships these clinics had with Dr. Chaffin, confirming again Dr. Chaffin and Dr. Schneider's partnership in the AWCC wound care vertical being presented.

35.     Dr. Schneider also utilized Dr. Chaffin's incredible name and brand recognition by advertising Dr. Chaffin's partnership in AWCC on a website the partners created for the business.

The website stated, as late as summer 2023, that "Dr. Daniel Schneider and Dr. Kristofer Chaffin started American Wound Care Centers together in 2020."

36.     In 2021 and parts of 2022, Dr. Chaffin mistakenly believed that Dr. Schneider was fulfilling his obligations to manage and grow the AWCC business for the benefit of the partners. Dr. Chaffin's understanding was based on recurring communications with Dr. Schneider in which the parties discussed the AWCC business and Dr. Schneider's efforts to grow it, and the fact that, at least initially, Dr. Schneider and Dr. Chaffin were sharing profits generated by the business.  Dr. Schneider, through a series of contrived and perfidious actions, gave the false impression to Dr. Chaffin that he was working hard to grow the business for the benefit of both partners.

37.     However, Dr. Chaffin subsequently discovered that, beginning in or around February 2022 (if not earlier), Dr. Schneider was using the AWCC name and brand to develop millions of dollars' worth of new wound care business from current and prospective AWCC customers, and then diverting that new business and the profits generated therefrom to a corporate entity that was formed, owned, and operated solely by Dr. Schneider.  Specifically, without Dr. Chaffin's knowledge or consent, Dr. Schneider processed orders for skin allografts and other wound care products and services through Tacoma Tennessee and funneled the money generated by those orders to bank accounts controlled by Tacoma Tennessee and/or its sole member, Dr. Schneider.

38.     Dr. Chaffin began to develop suspicions that Dr. Schneider was diverting wound care business from the partnership when he received a voice message from an AWCC client in October 2022.  The client stated in the voice message that Dr. Schneider had told him during a recent conversation that he (Dr. Schneider) was making $500,000 to $700,000 a month in "wound care," and the client was calling to ask Dr. Chaffin if Dr. Schneider's claim was accurate.

9

39.     Given the meager balances of the bank accounts maintained by the partnership for the AWCC business, and Dr. Schneider's repeated claims that the business was struggling to pay its operating costs and loans, Dr. Chaffin was shocked by the client's voicemail and began to develop suspicions that Dr. Schneider was diverting wound care revenue from the partnership and, consequently, Dr. Chaffin.

40.     Dr. Chaffin's suspicions were further aroused when, on October 28, 2022, $498,000 was deposited into a bank account used by the partners for the AWCC business, only to be quickly withdrawn from the account without Dr. Chaffin's consent.   The deposit was a check from Dr. Mehta for money earned from wound care business that Dr. Schneider had diverted from the partnership and was trying to hide from Dr. Chaffin.   Once Dr. Schneider realized that he had mistakenly deposited the secret funds into an account accessible to Dr. Chaffin, he reversed the deposit.

41.     Dr. Chaffin spoke with Merilee Reeves, a longtime associate of Dr. Chaffin and Dr. Schneider who was supposed to be working with Dr. Schneider on the AWCC business, regarding the deposit, and she was in a panic.   She told Dr. Chaffin that he should not have been notified about the deposit, and she was unable to provide a coherent explanation regarding the purpose of the check and why it was removed from the account.   During that conversation, Ms. Reeves expressed that she knows Dr. Chaffin and Dr. Schneider started AWCC together and these recent events were indeed "very strange."   She also expressed apprehension that Dr. Schneider's partner in a separate venture, Dr. Werner Marksfeld, would contact Dr. Chaffin and said, "Dan is very worried" about the potential communications that could take place between Dr. Marksfeld and Dr. Chaffin.

42.     Dr. Chaffin later discovered why Ms. Reeves and Dr. Schneider were apprehensive about Dr. Chaffin speaking with Dr. Marksfeld.  In 2023, Dr. Marksfeld informed Dr. Chaffin that, in October 2022, he (Dr. Marksfeld) had a conversation with Dr. Schneider in which Dr. Schneider casually shared about his difficulties with clearing a $500,000 check, which was a clear reference to the check from Dr. Mehta that mysteriously appeared and then disappeared in the partners' bank account.  According to Dr. Marksfeld, Dr. Schneider also admitted during this same conversation that he (Dr. Schneider) was withholding profits associated with the AWCC venture from Dr. Chaffin as a form of retribution.

43.     Dr. Chaffin also discovered, sometime late in 2022, that, according to the digital order-tracking file associated with the partners' AWCC business, orders for skin care allografts abruptly stopped after May 13, 2022, presumably because those orders were being diverted by Dr. Schneider to a different entity.

44.     The entity Dr. Schneider initially used to divert wound care business and corresponding profits from the partnership was Tacoma Tennessee.  Dr. Schneider formed this entity in August 2021 and listed the company's principal address as 9240 Lehigh Drive, Brentwood, Tennessee, 37027, which is he and his wife's home address.  The Tennessee Secretary of State website states that Tacoma Tennessee is a single-member, member-managed LLC.  Dr. Schneider started diverting profits from the partnership in February 2022 and perhaps even earlier.

45.     Property records associated with Tacoma Tennessee's principal address, 9240 Lehigh Drive, confirm that the entity belongs to Dr. Schneider.  Specifically, the records show that Dr. Schneider and his wife, Tara Schneider, owned 9240 Lehigh Drive before conveying the property to the Schneider Family Revocable Living Trust in June 2023, mere weeks following

notice to Dr. Schneider that Dr. Chaffin was taking legal action against him.  Dr. Schneider and his wife are co-trustees of that trust.

46.     A second company known as American Wound Care Centers PLLC was also formed in Tennessee on May 4, 2022.  Although Dr. Schneider's address is not associated with this entity, the registered agent is a client of the partnership, Dr. Ethan Kellum, and the timing of the entity's formation—nine (9) days before the last allograft order processed through the partnership—demonstrates that Dr. Schneider also likely used this entity to divert wound care business and profits from the partnership.

47.     Dr. Schneider never disclosed to Dr. Chaffin that he had diverted significant wound care revenues from the partnership and conveyed the false impression to Dr. Chaffin that the wound care business was a stagnant one with marginal profits.

48.     When Dr. Chaffin asked Dr. Schneider in December 2022 about year-end distributions associated with the wound care business, Dr. Schneider sent Dr. Chaffin a screen shot of a bank account indicating that the balance was still the same meager $33,000 it had been all year.  Dr. Schneider never disclosed that he had secretly earned millions that were funneled through a separate entity and separate bank accounts under the exclusive control of Dr. Schneider. Dr. Chaffin's inquiry to Dr. Schneider about year-end distributions was his last-ditch effort to seek an honest response from his partner.  It was at this time that Dr. Chaffin decided to take legal action against Dr. Schneider.

49.     Dr. Chaffin retained legal counsel in April 2023.  He and his legal team served Dr. Schneider with a formal demand letter at his 9240 Lehigh Drive address in Brentwood, Tennessee, on June 6, 2023.  As noted, Dr. Schneider and his wife Tara Schneider conveyed their 9240 Lehigh

Dr home to the Schneider Family Revocable Living Trust just weeks after the demand letter in June 2023.

50.     After some back and forth between Dr. Chaffin's counsel and Dr. Schneider's counsel, Dr. Chaffin's counsel sent a request for mediation on August 24, 2023.  Dr. Schneider did not respond to the mediation request until Friday, October 13, 2023.  On this same day, a small legal newsletter was posted publicly online stating that American Wound Care Centers PLLC had sold to Personic Healthcare for $2 million dollars.

51.     The asserted transaction price for the acquisition of American Wound Care Centers PLLC, publicly stated to be $2 million, does not reflect the verifiable economic value of a wound care business, which Dr. Chaffin reasonably estimates to generate revenues within the range of $500,000 to $950,000 per month.  On information and belief, Dr. Schneider was involved in the sale of AWCC PLLC and intentionally understated the value of the entity to conceal the amount of profits he has wrongfully diverted from Dr. Chaffin.

## CLAIMS FOR RELIEF
## COUNT I: BREACH OF FIDUCIARY DUTY
### [against Dr. Schneider]

52.     Dr. Chaffin restates and adopts by reference the allegations of the above paragraphs as though fully set out herein.

53.     Dr. Schneider and Dr. Chaffin were 50/50 partners since 2015 in various business ventures, including the wound care business that they operated under the AWCC name.  They expressly formed a partnership together, operated as partners with one another in connection with the AWCC wound care business, shared expenses associated with this business, initially shared profits derived from this business, and had equal right to make decisions affecting the business.

13

54.     Although both partners had equal rights to make decisions affecting the business, the partners agreed in October 2021 that Dr. Schneider would be primarily responsible for growing and managing the AWCC business on a day-to-day business for the benefit of both partners.

55.     Dr. Schneider was responsible for growing and managing the AWCC business, maintaining the company's records, filing the tax company's tax returns, and all other tasks customarily performed by a member of an LLC with responsibility for managing the company.

56.     As Dr. Chaffin's partner and as the individual primarily responsible for managing the wound care business, Dr. Schneider owed fiduciary duties to Dr. Chaffin, including the duty of loyalty and the duty to act in good faith and in the best interests of the partnership and Dr. Chaffin.

57.     In the alternative, Vitality Washington was the legal entity that owned, operated, and controlled the AWCC business, as evidenced by the tax returns Dr. Schneider filed for Vitality Washington reporting income derived from the AWCC business.  Dr. Schneider owed fiduciary duties to Dr. Chaffin as a member of Vitality Washington with responsibility for managing the AWCC business and distributing the profits derived therefrom through Vitality Washington.  Those duties include the duty of loyalty and the duty to act in good faith and in the best interests of Dr. Chaffin.

58.     Dr. Schneider willfully, intentionally, and maliciously breached his fiduciary duties of loyalty, care, and good faith to Dr. Chaffin by, *inter alia*:

    a.  using the branding and goodwill of both Dr. Chaffin and the AWCC business the partners had developed together to generate new wound care business from current and prospective AWCC customers;

    b.  wrongfully diverting that new business and the profits derived therefrom through Tacoma Tennessee and bank accounts under Dr. Schneider's exclusive control in order to enrich himself at Dr. Chaffin's expense and without Dr. Chaffin's knowledge, consent, or involvement; and

    c.  continuing to conceal his wrongful conduct from Dr. Chaffin.

14

59.     Dr. Schneider's breaches have caused Dr. Chaffin significant and special damages. As a 50% partner in the AWCC business and/or a 50% member in Vitality Washington, Dr. Chaffin is entitled to recover 50% of the wound care revenues diverted by Dr. Schneider from the beginning of Dr. Schneider's misconduct through the present, plus interest, legal fees, and punitive damages in an amount to be determined at trial.

## COUNT II: FRAUD
### [against Dr. Schneider]

60.     Dr. Chaffin restates and adopts by reference the allegations of the above paragraphs as though fully set out herein.

61.     Dr. Schneider defrauded Dr. Chaffin by failing to disclose to him numerous material facts that Dr. Schneider knew he had a duty to disclose to Dr. Chaffin as Dr. Chaffin's partner and/or co-member of Vitality Washington with managerial responsibility for running the AWCC business.  Those facts include that Dr. Schneider used the relationships Dr. Chaffin had formed with their clinics and the branding and goodwill of AWCC developed by the partners to develop new wound care business from current and prospective AWCC customers, and then diverted that new business and the profits derived therefrom from the parties' partnership and/or Vitality Washington to Tacoma Tennessee and bank accounts under Dr. Schneider's exclusive control in order to enrich himself at Dr. Chaffin's expense.

62.     Not only did Dr. Schneider fail to disclose these material facts, he actively concealed his wrongful conduct by falsely conveying to Dr. Chaffin that he (Dr. Schneider) was actively working on expanding and running the AWCC business for the benefit of both parties, and that the wound care business was stagnant and generating marginal profits.   Dr. Schneider continually affirmed to Dr. Chaffin that there were just enough funds to cover expenses, even successfully persuading Dr. Chaffin to agree to take out an SBA loan.  Based on Dr. Schneider's

15

misrepresentations and the apparent need for a loan, the fact that Dr. Chaffin was not receiving any distributions from the AWCC business in 2022 did not cause him to suspect misconduct on the part of Dr. Schneider.

63. Dr. Schneider's false representations reveal a deliberate and deceptive scheme to defraud Dr. Chaffin. By continually affirming the mere sufficiency of funds to cover expenses and persuading Dr. Chaffin to acquiesce to further loans, Dr. Schneider artfully crafted a façade of fiscal prudence. These maneuvers, including the justification of $0 in AWCC income distributions, were part of an elaborate ruse designed to obfuscate the true financial state of the business and ensure that Dr. Chaffin did not become suspicious of Dr. Schneider.

64. For example, on October 7, 2021, Dr. Schneider corresponded via text message with Dr. Chaffin about potentially obtaining a Covid-19 Economic Injury Disaster Loan (EIDL) to support the AWCC business. Dr. Schneider promised Dr. Chaffin "[you] won't need to do anything. Except transfer the cash when it comes in." In this exchange, Dr. Schneider conveyed that the AWCC business was in need of loan, and that he and Chaffin were partners working together on the deal.

65. On January 14, 2022, Dr. Schneider corresponded via text message with Dr. Chaffin about a new seminar and updated trainings on the partnership's and/or Vitality Washington's wound care products and services. In doing so, he misled Dr. Chaffin into believing that he (Dr. Schneider) was still trying to build the AWCC business for the benefit of both parties.

66. On January 24, 2022, Dr. Schneider, again via text message, represented to Dr. Chaffin that he, Dr. Schneider, had 436 doctors he was planning to contact in furtherance of the parties' wound care business. In doing so, he once again gave Dr. Chaffin the misimpression that he was continuing to build the AWCC business for the benefit of both parties.

16

67.     Dr. Schneider was not fulfilling his duty to manage the AWCC business for the benefit of both parties and was not generating marginal profits.  Dr. Schneider was generating significant profits from wound care business, actively and fraudulently concealing the generation of said profits, and then wrongfully diverting those profits to the detriment of Dr. Chaffin.

68.     Dr. Schneider made such misrepresentations and omissions intentionally, willfully, and maliciously in an effort to conceal his wrongful conduct from Dr. Chaffin; profit from new wound care business at Dr. Chaffin's expense; and induce Dr. Chaffin to both continue acquiescing in Dr. Schneider's day-to-day management of the business and refrain from taking measures to monitor the business and protect Dr. Chaffin's interests.

69.     In reasonable and good-faith reliance on Dr. Schneider's fraudulent misrepresentations and omissions, Dr. Chaffin allowed Dr. Schneider to have primary responsibility for managing the AWCC line of business, took a step back from running the business, and did not take corrective actions necessary to prevent and/or remedy Dr. Schneider's wrongful conduct and/or protect Dr. Chaffin's interest in the AWCC business.

70.     As a direct and proximate result of Dr. Schneider's fraudulent conduct, Dr. Chaffin has sustained damages and losses in an amount to be proven at trial.  Dr. Chaffin is also entitled to interest and punitive damages in an amount to be determined at trial.

## COUNT III: CONSTRUCTIVE FRAUD
### [against Dr. Schneider]

71.     Dr. Chaffin restates and adopts by reference the allegations of the above paragraphs as though fully set out herein.

72.     Dr. Schneider defrauded Dr. Chaffin by failing to disclose to him numerous material facts that Dr. Schneider knew he had a duty to disclose to Dr. Chaffin given their confidential relationship as partners and/or co-members of Vitality Washington.  Those facts include that Dr.

17

Schneider used the relationships Dr. Chaffin had formed with their clinics and the branding and goodwill of AWCC developed by the partners to develop new wound care business from current and prospective AWCC customers, and then diverted that new business and the profits derived therefrom from the parties' partnership and/or Vitality Washington to Tacoma Tennessee and bank accounts under Dr. Schneider's exclusive control in order to enrich himself at Dr. Chaffin's expense.

73.     Not only did Dr. Schneider fail to disclose these material facts, he actively concealed his wrongful conduct by falsely conveying to Dr. Chaffin that he (Dr. Schneider) was actively working on expanding and running the AWCC business for the benefit of both parties, and that the wound care business was stagnant and generating marginal profits.  Dr. Schneider continually affirmed to Dr. Chaffin that there were just enough funds to cover expenses, even successfully persuading Dr. Chaffin to agree to take out an SBA loan.  Based on Dr. Schneider's misrepresentations and the apparent need for a loan, the $0 in distributions Dr. Chaffin received from the AWCC business did not cause him to suspect misconduct on the part of Dr. Schneider.

74.     Dr. Schneider's false representations reveal a deceptive scheme to defraud Dr. Chaffin.  By continually affirming the mere sufficiency of funds to cover expenses and persuading Dr. Chaffin to acquiesce to further loans, Dr. Schneider artfully crafted a façade of fiscal prudence. These maneuvers, including the justification of $0 in AWCC income distributions, were part of an elaborate ruse designed to obfuscate the true financial state of the business and ensure that Dr. Chaffin did not become suspicious of Dr. Schneider.

75.     Examples of Dr. Schneider's false conveyances include, but are not limited to, the conversations via text messages between Dr. Schneider and Dr. Chaffin on October 7, 2021, January 14, 2022, and January 24, 2022.

76.     Dr. Schneider was not fulfilling his duty to manage the AWCC business for the benefit of both parties and was not generating marginal profits.  Dr. Schneider was generating significant profits from wound care business and then wrongfully diverting those profits to the detriment of Dr. Chaffin.

77.     In reasonable and good-faith reliance on Dr. Schneider's fraudulent misrepresentations and omissions, Dr. Chaffin allowed Dr. Schneider to have primary responsibility for managing the AWCC line of business, took a step back from running the business, and did not take corrective actions necessary to prevent and/or remedy Dr. Schneider's wrongful conduct and/or protect Dr. Chaffin's interest in the AWCC business.

78.     As a direct and proximate result of Dr. Schneider's fraudulent conduct, Dr. Chaffin has sustained damages and losses in an amount to be proven at trial.  Dr. Chaffin is also entitled to interest and punitive damages in an amount to be determined at trial.

## COUNT IV: CONVERSION
### [against Dr. Schneider and Tacoma Tennessee]

79.     Dr. Chaffin restates and adopts by reference the allegations of the above paragraphs as though fully set out herein.

80.     Dr. Schneider and Tacoma Tennessee have intentionally, willfully, and maliciously exercised domain, control, and responsibility over monies and funds generated from the partnership's and/or Vitality Washington's wound care business that were rightfully owed to Dr. Chaffin as a 50% partner of Dr. Schneider's and/or a 50% member of Vitality Washington.

81.     Dr. Chaffin has demanded that Dr. Schneider and Tacoma Tennessee pay him his fair share of the profits derived from the wound care business, but Defendants have refused without justification.

19

82.     Defendants' actions amount to a conversion of Dr. Chaffin's fair share of the profits of the wound care business.

83.     As a direct result of Defendants' tortious acts, Dr. Chaffin is entitled to compensatory damages in an amount to be proven at trial. Dr. Chaffin is also entitled to interest and punitive damages in an amount to be determined at trial.

### COUNT V: BREACH OF CONTRACT
### [against Dr. Schneider]

84.     Dr. Chaffin restates and adopts by reference the allegations of the above paragraphs as though fully set out herein.

85.     Dr. Chaffin and Dr. Schneider operated under a well-established and clearly understood model based on a business relationship built over seven (7) years. At the center of that relationship was an express contractual agreement in which both parties agreed to be 50/50 partners in all health care entities they worked on together, in perpetuity. Consistent with that foundational agreement, Drs. Chaffin and Schneider orally discussed and agreed that they would together create, own, and operate the wound care line of business as 50/50 partners using the AWCC name, with each partner entitled to 50% of the profits generated by the business. These conversations and the parties' overall course of dealing with one another were reasonably relied upon by Dr. Chaffin.

86.     The parties' agreement is also evidenced by the parties' equal shares in Vitality Washington and the equal distribution of AWCC profits, at least initially.

87.     The Purchase and Sale Agreement and the parties' oral agreements are valid and binding contracts supported by good and adequate consideration.

88.     Dr. Schneider has breached his agreements with Dr. Chaffin by failing to pay Dr. Chaffin 50% of the profits generated by the AWCC line of business. Rather than pay Dr. Chaffin

his fair share of the profits, Dr. Schneider deceptively funneled those profits to himself through various channels.

89.     Dr. Schneider's breaches have caused and will continue to cause Dr. Chaffin direct, consequential, and incidental damages in an amount to be determined at trial.

## COUNT VI: UNJUST ENRICHMENT
### [against Dr. Schneider]

90.     Dr. Chaffin restates and adopts by reference the allegations of the above paragraphs as though fully set out herein.

91.     Dr. Chaffin conferred a significant benefit on Dr. Schneider by working tirelessly over the years to support the parties' joint ventures, up to and including the wound care business they developed together using the AWCC name.

92.     Even after Dr. Schneider became primarily responsible for growing and managing the AWCC line of business, Dr. Chaffin continued to confer a benefit on Dr. Schneider by signing contractual agreements as "Owner" and on behalf of the partners; providing advice and input to Dr. Schneider regarding the business, marketing, and branding strategies for the AWCC business; providing advice and input on how to manage AWCC clinicians; allowing Dr. Schneider to use his (Dr. Chaffin's) name to help grow the AWCC business; and otherwise assisting Dr. Schneider as needed.

93.     Dr. Chaffin's hard work and reputation allowed Dr. Schneider to develop millions of dollars in new wound care business, but Dr. Schneider prevented Dr. Chaffin from sharing in the profits generated by that business by wrongfully diverting the business and the profits derived therefrom to the detriment of Dr. Chaffin.

94.     Dr. Schneider has retained millions of dollars in profits that Dr. Chaffin helped generate. It is unjust for Dr. Schneider to retain the benefits conferred on him by Dr. Chaffin without compensating Dr. Chaffin for the value of his services.

95.     Dr. Schneider must therefore disgorge all of the profits he earned as a result of Dr. Chaffin's efforts and fairly compensate Dr. Chaffin in an amount equal to the value of the benefit Dr. Chaffin provided to him.

## COUNT VII: TORTIOUS INTERFERENCE
### [against Tacoma Tennessee and Dr. Schneider]

96.     Dr. Chaffin restates and adopts by reference the allegations of the above paragraphs as though fully set out herein.

97.     Through its sole member, Dr. Schneider, Tacoma Tennessee knew that Dr. Schneider and Dr. Chaffin were partners who had agreed to run a wound care line of business under the AWCC name for the benefit of both parties as 50/50 partners and/or 50/50 members of Vitality Washington. Tacoma Tennessee also knew, through its sole member, Dr. Schneider, that the partnership had contracts and relationships with certain healthcare providers to sell them wound care products and services, including allografts and liquid injections.

98.     Tacoma Tennessee, acting through its sole member, Dr. Schneider, intentionally and maliciously interfered with the foregoing contracts and relationships by soliciting, processing, and diverting wound care business of the partnership and/or Vitality Washington, including wound care business that was the subject of contracts between healthcare providers, on the one hand, and the partnership and/or Vitality Washington, on the other. Tacoma Tennessee's and Dr. Schneider's intention was to divert profits from Dr. Chaffin, cause healthcare providers to end their relationships with the partnership and/or Vitality Washington, and place their wound care orders through Tacoma Tennessee as part of a scheme to enrich Dr. Schneider and harm Dr. Chaffin.

22

99.     Tacoma Tennessee's and Dr. Schneider's actions were a proximate cause of Dr. Schneider breaching his agreements with Dr. Chaffin to share the profits from the wound care business 50/50, and of healthcare providers terminating their business relationships with the partnership and/or Vitality Washington. Healthcare providers stopped ordering wound care products through the partnership and/or Vitality Washington after Dr. Schneider diverted their orders to a new entity and lab.

100.    As a direct and proximate result of Defendants' wrongful conduct, Defendants have wrongfully diverted millions of dollars in profits from the wound care business from Dr. Chaffin.

101.    Dr. Chaffin has therefore sustained direct, consequential, and incidental damages, and losses in an amount to be proven at trial. He is also entitled to interest and punitive damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for the following relief:

1.      That proper process issue and be served upon Defendants, requiring them to appear and answer this Complaint;

2.      That Plaintiff be awarded actual, compensatory, consequential, and/or incidental damages against all Defendants, jointly and severally, on his claims for breach of fiduciary duty, fraud, constructive fraud, conversion, breach of contract, unjust enrichment, and tortious interference in an amount sufficient to compensate him for the damages and injuries he has sustained as a result of Defendants' wrongful conduct or, in the case of his unjust enrichment claim, in an amount equal to the value of the benefit Dr. Chaffin conferred on Dr. Schneider;

3.      That Plaintiff be awarded punitive damages in an amount sufficient to punish Dr. Schneider's wrongful conduct and deter future misconduct;

23

4.    That the Court order Defendants to disgorge all funds that they obtained as a result of their wrongful conduct;

5.    That the Court award pre-judgment and post-judgment interest at the highest lawful rates;

6.    That the Court tax the costs of this action to Defendants and award Plaintiff his reasonable and necessary attorneys' fees incurred in connection with this action; and

7.    That the Court award such other and further relief as it deems appropriate.

## **JURY DEMAND**

Plaintiff requests a trial by jury on all matters raised herein.


Date: May 17, 2024                                  Respectfully submitted,

                                                    **NEAL & HARWELL, PLC**

                                            By:  /s/ Aubrey B. Harwell III
                                                    Aubrey B. Harwell III (BPR # 17394)
                                                    Nathan C. Sanders (BPR # 33520)
                                                    Olivia R. Arboneaux (BPR # 40225)
                                                    Elizabeth Tirrill (BPR # 41346)
                                                    1201 Demonbreun Street, Suite 1000
                                                    Nashville, TN 37203
                                                    (615) 244-1713
                                                    trey@nealharwell.com
                                                    nsanders@nealharwell.com
                                                    oarboneaux@nealharwell.com
                                                    etirrill@nealharwell.com


                                                    Charles S. Lew (BPR # 227495)
                                                    (*pro hac vice application to be filed*)
                                                    **The Lew Firm, APC**
                                                    9440 Santa Monica Blvd., Suite 301
                                                    Beverly Hills, CA 90210
                                                    (213) 446-3821
                                                    charles@thelewfirm.com

                                                    *Counsel for Plaintiff*